# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL NO. 1:07CV395

| | |
|---|---|
| ANCIENT SUN NUTRITION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | MEMORANDUM AND |
| ) | <u>O R D E R</u> |
| JULIE LAWLOR and LO BASICO ) | |
| NUTRITION, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on motion of Plaintiff Ancient Sun Nutrition, Inc. ("Ancient Sun" or Plaintiff) for default judgment. **Plaintiff's Motion for Default Judgment, filed March 31, 2008.** For the reasons stated herein, the motion is granted.

## I. FACTUAL AND PROCEDURAL HISTORY

In December 2007, Ancient Sun filed a complaint against Defendants Julie Lawlor ("Lawlor") and Lo Basico Nutrition, Inc. ("Lo Basico"). **Complaint, filed December 19, 2007.** The complaint alleges the following facts. Ancient Sun is a corporation based in Arden, North Carolina, whose

business is distributing "premium quality wild blue-green algae and other nutritional products." *Id.* ¶ 6. Lawlor, a minority shareholder and a director of Ancient Sun, was hired as the company's accountant in April 2006. *Id.* ¶ 7.

Between April 2006 and October 2007, Lawlor used her access to Ancient Sun's customer and supplier lists, financial accounts, and other confidential information, to embezzle nearly $90,000 from Ancient Sun and established a rival business, Lo Basico. *Id.* ¶¶ 15-25. In order to get Lo Basico off the ground, she attempted – often successfully – to sabotage Ancient Sun's relationships with its customers, suppliers, and other associates, convincing them that Ancient Sun was going bankrupt and they should do business with Lo Basico instead. *Id.* She also used her position as the company accountant to undermine Ancient Sun's bookkeeping and financial records, causing Ancient Sun to incur numerous federal and state tax penalties, become delinquent in payments to its suppliers, and lose its good business reputation. *Id.* ¶¶ 14, 24.

Ancient Sun's complaint names causes of action in embezzlement, conversion, misappropriation of trade secrets, computer trespass and abuse, false advertising, breach of fiduciary duty, constructive fraud,

defamation, tortious interference with prospective advantage, fraud, unfair and deceptive trade practices, negligence, unjust enrichment, breach of the non-disclosure agreement, and breach of the covenants of good faith and fair dealing. *Id.* ¶¶ **26-111.** The complaint requests relief in the form of compensatory and punitive damages. *Id.* **at 13-14.**

After Lawlor and Lo Basico failed to respond to the summons and complaint, Plaintiff moved and was granted an order of entry of default. **Order of Entry of Default of Defendants Julie Lawlor and Lo Basico Nutrition, Inc., filed February 14, 2008.** Plaintiff has now moved for a default judgment. **Plaintiff's Motion,** *supra.*

## II. SERVICE OF PROCESS UPON DEFENDANTS

**A. Service on Lawlor**

Entries in the Court's docket reveal that Lawlor attempted to avoid being served with Ancient Sun's summons and complaint by fleeing to Ireland, where she apparently remains. **See Affidavit of Jeananne M. Benevento,** *attached to* **Memorandum in Support of Motion for Entry of Default, filed February 11, 2008, ¶¶ 23-27 (letter from Lo Basico employee explaining that Lawlor "panicked" when she learned that**

Ancient Sun was pursuing legal action, and that she boarded a flight to Ireland the next day); Exhibit A, Letter from Matthew N. Lawlor, *attached to* Memorandum in Support of Motion for Entry of Default, *supra* (letter from Lawlor's husband stating that Lawlor was out of the country when the summons and complaint were first served at her home); *see also* Certificate of Service, filed April 8, 2008 (stating that Ancient Sun's motion for default judgment had been served on Lawlor by mailing it to her at an address in Dublin, Ireland).

Service of a summons on an individual defendant, such as Lawlor, is governed by Rule 4(e)(2). This subsection provides, in pertinent part, that "an individual . . . may be served in a judicial district of the United States by . . . leaving a copy of [the summons] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." **Fed. R. Civ. P. 4(e)(2)(B).** Generally, "where actual notice of the commencement of the action and the duty to defend has been received by the one served," Rule 4(e)(2) is liberally construed to effectuate service. *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963) (seminal case in which husband moved to Arizona with no intention of returning to Maryland, but process served on wife at former home in Maryland

**was held to be effective since husband had actual notice of impending lawsuit).**

As to the mechanics of personal service, one federal court recently noted:

> "If the defendant attempts to evade service or refuses to accept delivery after being informed by the process server of the nature of the papers, it is usually sufficient for the process server to touch the party to be served with the papers and leave them in the defendant's presence or, if a touching is impossible, simply to leave them in the defendant's physical proximity. It is not crucial in these circumstances that the defendant does not take the papers into his or her possession. Since this procedure satisfies the objective of giving notice to the party to be served, it seems to be entirely sufficient to satisfy the delivery requirement of Rule 4(e)(2)."

*Slaieh v. Zeineh*, __ F. Supp. 2d __, 2008 WL 542837, at *3 (S.D. Miss. Feb. 25, 2008) (quoting 4A Wright & Miller, *Federal Practice and Procedure*, § 1095 (3d ed. 2002)).

In this case, a private process server hired by Ancient Sun filed an affidavit stating she went to the Lawlor residence at 24 Fieldcrest Circle, Asheville, North Carolina, to serve the summons and complaint on Lawlor. **Affidavit of Private Process Server Lenora Topp,** *attached to* **Memorandum in Support of Motion for Entry of Default,** *supra*, **¶ 3.** Lawlor's husband, Matthew Lawlor, was at home "but indicated that he did

not want to accept delivery of the summons and complaint." *Id.* **¶11.** The process server further stated: "When Matthew Lawlor refused to take the documents from me, I left them on the floor just inside the front door of the residence." *Id.* **¶12.**

These facts establish that Ancient Sun successfully served the summons and complaint on Lawlor pursuant to Fed. R. Civ. P. 4(e)(2)(B). The evidence indicates that Lawlor had actual notice of the impending lawsuit and her duty to defend, and that such knowledge caused her to flee to Ireland. **Benevento Affidavit,** *supra,* **at ¶¶ 23-27.** Thus, the actual notice requirement described in *Karlsson* is met. Additionally, there is no dispute that Lawlor's husband is a person of suitable age and discretion residing in Lawlor's home, as required by Rule 4(e)(2)(B). Furthermore, the process server's actions in leaving the documents in the husband's presence, inside the door of the house – despite his attempts to refuse service – meet the test described in *Slaieh*.

**B. Service on Lo Basico**

Service of a summons and complaint on a corporation is governed by Rule 4(h):

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> > (1) in a judicial district of the United States:
> >
> > > (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> > >
> > > (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant[.]

**Fed. R. Civ. P. 4(h).** Rule 4(e)(1), as referenced in subsection (h), provides for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." **Fed. R. Civ. P. 4(e)(1).** North Carolina's Rules of Civil Procedure, in turn, provide that service of process may be made upon a corporation by, among other things, "mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director or agent to be served[.]" **N.C. R. Civ. P. 4(j)(6)(c).**

In this case, the evidence indicates that Ancient Sun's attorney sent the summons and complaint via certified mail, return receipt requested, addressed to Julie Lawlor at Lo Basico's principal office address, which was also the Lawlor residence. **Affidavit of Service Upon Lo Basico Nutrition, Inc., filed January 25, 2008, at ¶ 2; Exhibit B, Articles of Incorporation,** *attached to* **Memorandum in Support of Motion for Entry of Default,** *supra* **(indicating that Lo Basico's registered business address was 24 Fieldcrest Circle, Asheville, North Carolina);** *compare* **Certificate of Service, filed April 8, 2008 (stating that Ancient Sun's motion for default judgment was mailed to a post office box in Leicester, NC, care of Registered Agent Julie Lawlor).** Postal records indicate that Priscilla Pratts, Lawlor's 18-year-old daughter, signed for the summons and complaint. **Affidavit of Service,** *supra***, at ¶3, 5; Letter from Matthew Lawlor,** *supra***, stating that Pratts had signed for the documents and "had [them] in her room under some clothes").** Thus, under Federal Rule 4 and North Carolina Rule 4, Lo Basico was properly served.

In addition to noting the proper service of the complaint and summons upon both Defendants, the Court observes that the instant

motion for default judgment, with accompanying proposed default judgment, was served on April 8, 2008, upon Lo Basico, in care of Lawlor, via certified mail, to a post office box in Leicester, North Carolina. The same documents were served on Lawlor at a street address in Dublin, Ireland, via first class mail. **Certificate of Service of April 8, 2008, *supra*.** Rule 5 of the Federal Rules of Civil Procedure, which governs the service of pleadings and other papers generally, allows such papers to be served by "mailing it to the person's last known address – in which event service is complete upon mailing." **Fed. R. Civ. P. 5(b)(2)(C).** Thus, the instant motion for default judgment was properly served via this rule. Although responses were due from Defendants on April 25, 2008, no such responses have been filed. **LcvR 7.1(E) ("Responses to motions, if any, shall be filed within fourteen (14) days of the date on which the motion is served, as evidenced by the certificate of service attached to said motion."); Fed. R. Civ. P. 6(d) ("When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), . . . 3 days are added after the period would otherwise expire[.]").** Defendants, in fact, have made no appearances whatsoever in this lawsuit.

## III. DEFAULT JUDGMENT

Default judgment is governed by Rule 55(b), which provides that "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk . . . must enter a judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear . . . ." **Rule 55(b)(1).** In circumstances where there the sum is not certain, Rule 55(b)(2) applies, requiring that default can only be entered by the Court. In this case, because Plaintiff requests discretionary punitive damages, the relief requested is not for a sum certain. Therefore, Plaintiff's motion for default judgment has been referred to the undersigned.

"By defaulting, the defendant admits the plaintiff's well pleaded allegations of fact." ***Agri-Supply Co., Inc. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006) (quotation omitted).** Here, as noted above, Plaintiff alleges Defendants committed embezzlement, conversion, misappropriation of trade secrets, computer trespass and abuse, false advertising, breach of fiduciary duty, constructive fraud, defamation, tortious interference with prospective advantage, fraud, unfair and deceptive trade practices under Chapter 75 of the North Carolina General

Statutes, negligence, unjust enrichment, breach of the non-disclosure agreement, and breach of the covenants of good faith and fair dealing. Because Defendants – through their total lack of response – are deemed to have admitted to the complaint's allegations, and because the allegations contain the necessary elements for the causes of action listed above, the Court finds that default judgment in favor of Plaintiff is appropriate in this case.

Along with its motion for default judgment, Plaintiff has submitted affidavits by employees and outside experts, as well as documentary evidence, to support its various requests for damages. **Motion for Default Judgment**, *supra*, **at 1-2.** Specifically, Plaintiff requests compensatory damages as follows:

(1) $85,188.00 resulting from Defendants' conversion and embezzlement;

(2) $204,869.00 in current lost profits;

(3) $424,004.00 in future lost profits;

(4) $77, 533.00 in costs and fees, including monetary penalties, late payment fees, interest charges, and fees for professional services.

*Id.* The grand total of these compensatory damages is $791,594.00.

Plaintiff also requests treble damages pursuant to its claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, as well as punitive damages at the discretion of the Court. *Id.* **at 2.** Under North Carolina law, when, as here, the same course of conduct gives rise to both common law and Chapter 75 claims, Plaintiff is entitled to either treble damages under N.C. Gen. Stat. § 75-16[1] or punitive damages under the common law, but not both. **Stanley v. Moore, 339 N.C. 717, 725, 454 S.E.2d 225, 229 (1995).** Accordingly, the Court will award treble damages under Chapter 75 and, in its discretion, deny Plaintiff's motion for punitive damages. A trebling of the compensatory damage award of $791,594.00 results in a total damages award of $2,374,782.00.

---

[1]N.C. Gen. Stat. § 75-16 provides:

If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of [Chapter 75], such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion for default judgment is hereby **GRANTED**; a Default Judgment is entered herewith.

Signed: May 1, 2008

Lacy H. Thornburg
United States District Judge